UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                                                          Chapter 7
Austin M. Ingram,                                                                  Case No. 13-35756-svk
        Debtor.

DECISION AND ORDER REQUIRING DEBTOR'S ATTORNEY TO REFUND FEES

      In this case, the Court is faced with the task of reviewing a debtor's attorney fee under § 329 of the Bankruptcy Code. Under that section, if a fee charged by a debtor's attorney is excessive, the Court can order the attorney to return the excess. On December 5, 2013, Austin Ingram (the "Debtor") hired Attorney Kayla Laswell ("Attorney Laswell") to file a bankruptcy petition in an effort to recover possession of his 2008 Ford truck. Attorney Laswell filed the Debtor's Chapter 7 petition on December 9, 2013.

      On December 4, 2013, the Sheriff of Kenosha County executed on a judgment against the Debtor in favor of Richard Wilson ("Wilson"). Wilson was able to obtain an execution specifically directed at the truck, even though a security interest of Allied First Bank (the "Bank"), and the Debtor's $4,000 exemption under Wisconsin law had priority over Wilson's judgment. When Jensen Towing, who had possession of the truck on behalf of the Sheriff, refused to release the truck, the Bank moved to enforce the automatic stay and for sanctions against Jensen Towing. The Court held a preliminary telephone hearing on the Bank's motion on February 3, 2014. Initially, the Debtor and the Bank's attorney were the only participants, and the Court contacted Attorney Laswell and asked her to appear at the hearing. Her explanation for not appearing was, "I was retained only for the bankruptcy itself. And my understanding from the bankruptcy was that it was already discharged and we included Jensen Towing in the bankruptcy." (The discharge was not due to be granted until March 10, 2014, and Jensen Towing is not included as a creditor in the bankruptcy schedules.) After learning that she had charged $1,750 for her

services, the Court indicated that it would hold a hearing on the reasonableness of Attorney Laswell's fees. The hearing was held on March 12, 2014.

At the hearing, Attorney Laswell stated that she graduated from law school in 2004 and that she had assisted her former law partner with his bankruptcy cases. It was apparent from Attorney Laswell's description of her bankruptcy experience that she has little experience and almost no independent experience. The Court noted that it could find a record of her filing only three bankruptcy cases on her own. Attorney Laswell did not dispute this. In one of the other cases, the debtors represented by Attorney Laswell listed no personal property other than a vehicle, until the trustee required them to amend the schedules.

Attorney Laswell's Rule 2016(b) Disclosure of Compensation Form reveals that she received fees of $2,050 from Cindy Ingram. She admitted to inaccuracies in the services described in the form. One of the more glaring errors is that her services included attendance at a "confirmation hearing." In a Chapter 7 case, there is no plan and thus no confirmation hearing. Apparently, Attorney Laswell used a Chapter 13 form, and either did not review it or did not comprehend the seriousness of making inaccurate disclosures to the Court. In the form, among other things, Attorney Laswell disclosed that she agreed "to render legal service for all aspects of the bankruptcy case," including a number of specifically identified services and concluding with "[o]ther provisions as needed."

At the hearing, Attorney Laswell provided the Court with her form fee agreement signed by the Debtor on December 5, 2013. She described it as a flat fee agreement. However, it contemplates that the unearned portion of the fee will be refunded and recites that her services are charged at $225 per hour, her paralegal's at $115 per hour. The fee agreement suggests a misunderstanding of bankruptcy law, with statements such as, "I further understand that there is a follow-up credit counseling course after the 341 meeting, known as a Debtor Financial Education Course. I understand that any delay in taking this second course will delay entry of the Order of Discharge." The financial management course may be taken at any time after the petition is filed, and the certificate of completion of the course must be filed

within 60 days after the § 341 meeting, or the debtor will not receive a discharge. The fee agreement also implies that reaffirmations can be negotiated after the discharge. They cannot.

At the hearing, the Court pointed out that the Debtor's bankruptcy schedules and statement of financial affairs are riddled with mistakes. The only asset listed is the 2008 Ford truck. (Under the categories of cash on hand, household goods, books, pictures, wearing apparel, jewelry, sports equipment and tax refunds, the Debtor claims "None".) While the Debtor certainly shoulders part of the blame for failing to list his clothing and other assets, Attorney Laswell is responsible for the fact that the Debtor claimed no exemptions. The Debtor is unemployed, unmarried, and has no income. Four creditors are listed, not including Jensen Towing. For such a simple (and perhaps unnecessary) bankruptcy, the erroneous filings and misstatements of Attorney Laswell – including that the discharge had been granted when it had not – are difficult to understand. Attorney Laswell told the Court she took responsibility for the errors, as she must.

Obviously frustrated by his attorney not helping him get his truck back, the Debtor wrote the Court on December 12, 2013, three days after his petition was filed. He related that the truck was fully encumbered when it was seized by the Sheriff, and that he had been trying to recover possession of the truck, which he co-owns with his grandmother. "I started contacting attorney's [sic] and was advised to file bankruptcy on Friday December 6, 2013. . . . By filing bankruptcy I was told my 2008 Ford Truck would have to be returned to me. Well now it's filed and I am being told by [Wilson that he] will not sign off on it. . . . The Kenosha County sheriff told us they washed their hands from this. Allied Bank said they are waiting to hear from Judge Schroeder. [Wilson's attorney] said he washed his hands from it. Our attorney Kayla Laswell said her hands are tied! . . . I am not being legally represented properly. I feel attorney Kayla Laswell should have known how to do this."

The Court understands the Debtor's frustration with Attorney Laswell. At the hearing, Attorney Laswell said she never promised the Debtor she could get his truck back. But apparently that was because he was unemployed so she didn't know if the Bank would enter into a reaffirmation agreement. Attorney Laswell told the Court that she did a lot of work trying to get the truck back, her time exceeding

the $2,050 paid by over $800. However, the billing statements and Attorney Laswell's comments at the hearing reveal that this work was in the form of phone calls and e-mails. When pressed as to why she advised the Debtor to file bankruptcy to recover the truck, Attorney Laswell told the Court she contacted the clerk for the state circuit court judge who entered the judgment against the Debtor and the clerk "stated and I have the e-mail here, said that the remedy essentially would be through the Bankruptcy statute." This advice did not prompt Attorney Laswell to consult the Bankruptcy Code, file a motion to recover the truck, or even to appear at the hearing when the Bank filed its motion for sanctions.

According to the Rule 2016(b) disclosure form, Attorney Laswell's services allegedly included "Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy." But Attorney Laswell could not explain why she advised the Debtor to file Chapter 7 to recover the truck. The Debtor represented that, when served with the execution, he told the Sheriff that the truck was fully encumbered. This statement should have prevented the execution from taking place. Section 815.18(3)(g) of the Wisconsin Statutes authorizes a debtor to exempt from execution "motor vehicles not to exceed $4,000 in aggregate value." "Aggregate value" is defined in § 815.18(2)(a) as the "sum total of the debtor's equity in the property claimed exempt." And "equity" means the "fair market value of the debtor's interest in property, less the valid liens on that property." Wis. Stat. § 815.18(2)(g). With the Bank's $24,000 first lien and the Debtor's $4,000 exemption ahead of Wilson's judgment, it is apparent that the Vehicle was exempt from execution.

Wrongful levy on exempt property has been recognized as actionable in Wisconsin for over 100 years. *Stern v. Riches*, 111 Wis. 591, 87 N.W. 555 (1901) (holding that officer levying on property can be liable for refusing to recognize debtor's claim of exemption). A judgment creditor may also be held liable for wrongful execution. Generally, liability is premised on some form of direct participation in the wrongful levy; for instance, a judgment creditor may be held liable for wrongful levy if he or she advises the sheriff to seize assets not belonging to the debtor. 30 Am. Jur. 2d *Executions and Enforcements of Judgments* § 526 (2014). But a judgment creditor can ratify a sheriff's wrongful execution if the creditor refuses to release wrongfully seized property. *See Thames River Assocs. Ltd. Partnership v. Security*

*Windows (In re Thames River Assocs. Ltd. Partnership)*, 159 B.R. 669, 671 (Bankr. D. Conn. 1993) ("An action based on a judgment creditor's execution upon exempt funds states a claim for damages for wrongful execution. . . .Once a judgment creditor ratifies the wrongful execution by taking possession of the funds and refusing upon demand to return them to the plaintiff, it may be sued alone without either the levying officer or any other third party being joined.")

Under the circumstances, the state court, not the bankruptcy court, would have been the proper forum for the Debtor to attempt to recover his truck. The Debtor has few assets to protect and virtually no other creditors, and now he is foreclosed from Chapter 7 relief for another eight years. Attorney Laswell admitted that she could not remember working on a case where someone had property seized and filed for bankruptcy as a means of getting it back. She told the Court she never considered filing anything in the bankruptcy case or in state court to retrieve the Debtor's truck. And, when the Bank filed its motion to enforce the automatic stay, Attorney Laswell did not plan to appear and represent the Debtor at the hearing. She did so only after the Court directed her to do so. Attorney Laswell acknowledged she did no legal research on how to retrieve property from an apparent wrongful execution. Her inexperience does not excuse her failure to appear and advocate on behalf of her client at the hearing on the Bank's motion or to research how to help her client retrieve his truck. Nor does it excuse her failure to find an experienced bankruptcy attorney to guide her through the process of analyzing the issues and taking appropriate action.

As the bankruptcy court noted in *In re Collmar*, 417 B.R. 920, 921 (Bankr. N.D. Ind. 2009), "Many decisions emphasize that when an attorney undertakes the representation of a bankruptcy debtor they are agreeing to do so for the entire case and not simply for various bits and pieces of it." The *Collmar* court cited numerous examples of attorneys being required to defend debtors in adversary proceedings and reaffirmation hearings in order to comply with the Rules of Professional Conduct. Appearing with the debtor at a hearing to enforce the automatic stay is even more rudimentary and obvious than those situations. In short, competent representation of a bankruptcy debtor must include assisting the debtor in enjoying the protection of the automatic stay.

In sum, Attorney Laswell charged the Debtor over $2,000 to file a bankruptcy that probably should not have been filed. She then filed mistake-ridden bankruptcy schedules and an erroneous Rule 2016(b) disclosure statement. Although she knew that the recovery of the truck (the Debtor's sole asset) was the only reason for the bankruptcy, she failed to file any motion or adversary proceeding to recover the truck. When the Bank filed such a motion, the Debtor appeared *pro se* at the hearing, because Attorney Laswell took the untenable position that her fees only included "the bankruptcy." The issues raised by the seizure and retention of the Debtor's truck fall squarely within her agreement to represent the Debtor in this bankruptcy case. Under these circumstances, the Court concludes that no fee is reasonable.

IT IS THEREFORE ORDERED: On or before April 4, 2014, Attorney Laswell must refund the full amount of $2,050 to Cindy Ingram.

Dated: March 27, 2014.

By the Court:

Susan V. Kelley
U.S. Bankruptcy Judge